(C. D. 204)

C. J. Tower & Sons *v.* United States

United States Customs Court, First Division

(Decided August 25, 1939)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiffs.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges

McCLELLAND, Presiding Judge: The merchandise. the classification of which is the subject of this protest is described on the entry as "Bulk Petroleum Coke" and was assessed with duty at the rate of 45 per centum ad valorem under the provision in paragraph 216 of the Tariff Act of 1930 for "articles or wares composed wholly or in part of carbon or graphite, wholly or partly manufactured, not specially provided for." The protest claim is for entry free of duty under paragraph 1650 of the said act as coke, or alternatively for duty at the rate of 30 per centum ad valorem under the provision of paragraph 214 for "earthy or mineral substances wholly or partly manufactured, * * * not specially provided for," or at the rate of 10 per centum ad valorem under either paragraph 213 or 1558, or at the rate of 20 per centum ad valorem under paragraph 1558. The claims chiefly relied upon are those under paragraph 1650 and paragraph 214.

When the protest was called for trial Russell C. Wilcox was called as a witness for the plaintiffs. Mr. Wilcox identified himself as works manager of the Thorold, Canada, plant of the Exolon Co., and stated that he had occupied that position for about 15 years. As such plant manager he testified that he had general supervision of the plant activities and that he was familiar with the material the plant treats, manufactures, and produces. The particular material in issue, he said, was manufactured from petroleum coke which is the residue left after petroleum is distilled to dryness. Such coke, he said, was placed in a furnace into which two electrodes were introduced and a path of amorphous graphite placed between the two electrodes. When the current was turned on the path of graphite completed the circuit, with the result that a great amount of heat was generated within the furnace by reason of which the moisture and volatile matter were driven from the coke in the form of gases. The resultant product, he said, was used in the manufacture of dry batteries, and is known as calcined petroleum coke.

·We are satisfied from the foregoing record that the merchandise is · not "articles or wares composed wholly or in part of carbon or graphite" as classified by the collector. It conclusively appears that the merchandise which was placed into the furnace was coke and that the merchandise which came out therefrom and forms the subject of this protest was still coke, although it had been advanced by having been calcined by eliminating therefrom moisture and volatile material. The evidence indicates that no new article or ware was produced by the calcining operation but that instead the material, coke, was advanced in condition, and, presumably, value.

That material such as in the case at bar, notwithstanding that it has been advanced in condition or value, is nevertheless subject to classification under the provision in paragraph 1650 for "coke" as claimed in the protest is, we believe, well settled. In *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. 464, T. D. 47464, it was held that clam meat which had been washed, cut into small pieces, canned in brine, and cooked was nevertheless classifiable under the *eo nomine* provision for "clams," rather than under the provision for "shellfish." Among other things the court said:

The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

We therefore sustain the protest claim for free entry under paragraph 1650, the decision of the collector being reversed. Judgment will issue accordingly.